No. 14603

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

EDWARD R. HARVEY,

Defendant and Appellant.

---

Appeal from:    District Court of the Third Judicial District,
Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

For Appellant:

Knight, Dahood, Mackay and McLean, Anaconda, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Ted Mizner, County Attorney, Deer Lodge, Montana

---

Submitted on briefs: September 13, 1979

Decided:    NOV 21 1979

Filed:    NOV 21 1979

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant Edward R. Harvey appeals from a conviction entered in the District Court, Third Judicial District, Powell County, on the charge of felony theft in violation of section 45-6-301, MCA.

On February 16, 1978, an information was filed in the District Court, Powell County, charging Harvey with the November 23, 1977, felony theft of a .243 caliber Sako rifle from Theodore Nelson. On February 23, 1978, Harvey entered a plea of not guilty and the District Court appointed counsel to represent Harvey. Harvey was released on a recognizance bond at this time. On April 27, 1978, however, Harvey was incarcerated in the Montana State Penitentiary for a parole violation charge.

On September 19, 1978, Harvey filed a motion to dismiss on the ground of failure to grant a speedy trial. That motion was denied two days later. Harvey then filed a writ of supervisory control with this Court on September 22, 1978. We denied the writ without prejudice on September 29, 1978.

During the time Harvey was incarcerated for the parole violation charge, he became dissatisfied with the work of his court-appointed counsel. So, on October 2, 1978, one day before the trial of this cause, Harvey excused his court-appointed counsel. Harvey represented himself throughout his trial on the charge of felony theft.

At the trial, there was a conflict in testimony concerning the circumstances surrounding the theft of the Sako rifle.

Robert Paulus, Harvey's former son-in-law, was the State's chief witness. Paulus testified at the trial that he and Loretta Paulus (Dillion), his former wife, were house guests of the Harveys during the Thanksgiving holidays. At about ten or

-2-

eleven o'clock p.m. on November 23, 1977, both couples decided to go to Elliston, Montana, to sell a used pickup truck for Wallin's Ford, where Edward Harvey was employed as a salesman. They arrived in Elliston about a half hour later and stopped at a bar there.

Paulus further testified that Edward Harvey noticed a .243 caliber Sako rifle in the back window of a pickup truck parked at the bar. Ignoring the warnings of his three passengers, Edward Harvey put on a pair of gloves, unlocked the door through the vent window and took the rifle. Edward Harvey then left with the rifle and headed towards Helmville, Montana. Harvey stopped just outside of Avon, Montana, shot five shells through the rifle and discarded the leather sling from the rifle. About fifteen minutes later, Harvey and his passengers returned to Deer Lodge. Upon arriving at the Harveys' apartment, Harvey put the rifle in the closet in the bedroom.

Harvey was the only witness for his defense. He testified that Paulus brought the rifle to the Harvey's apartment on November 23, 1977. Paulus told the Harveys that he needed money. Over Harvey's objections, Paulus talked Mrs. Harvey into buying the rifle for $135. Mrs. Harvey executed a receipt for payment in full for the rifle. She handed the receipt to Paulus for his signature and walked out of the room to get the $135. While Mrs. Harvey was out of the room, Paulus signed the name Paul Johnson on the receipt, folded it in half and gave it back to Mrs. Harvey upon her return. Mrs. Harvey stored the receipt without ever looking at the signature.

On November 29, 1977, Paulus and his wife returned to their home in Roundup, Montana. On their way, they stopped at the McDonald Pass Bar in Elliston to report Harvey's theft.

In January 1978, a special deputy sheriff came to the Harvey residence to inquire about the rifle. Harvey was the only one home at the time. Harvey voluntarily gave the rifle to the

-3-

deputy sheriff. An examination of the serial number confirmed that the rifle belonged to Theodore Nelson. Harvey was informed that the rifle was stolen and would have to be confiscated.

Mrs. Harvey arrived just as the deputy sheriff was leaving. The deputy sheriff was informed that Mrs. Harvey had purchased the rifle from her son-in-law, Paulus. Mrs. Harvey then produced the receipt bearing the name Paul Johnson for the deputy sheriff.

Harvey's trial on the charge of felony theft was held on October 3, 1978. A jury verdict of guilty was entered on October 4, 1978, and on October 19, 1978, Harvey was sentenced to a term of five years in the state penitentiary.

Following his conviction, Harvey, acting pro se, filed a notice of appeal and appellant's initial brief. On May 10, 1979, the District Court appointed counsel to represent Harvey upon this appeal.

Harvey raises the following issues upon appeal:

1. Was the evidence sufficient to support a finding that the value of the Sako rifle exceeded $150?

2. Did the District Court err in failing to instruct the jury that Harvey could have been convicted of a lesser included offense?

3. Was Harvey denied the right to adequate counsel?

4. Did the District Court abuse its discretion in requiring Harvey to testify in question-answer form?

5. Was Paulus an accomplice to the crime charged, and if so, did the State fail to corroborate his testimony?

6. Was it error to deny Harvey's motion for a continuance for the purpose of subpoenaing witnesses to impeach Paulus' testimony?

7. Was Harvey denied his constitutional right to a speedy trial?

-4-

Having examined the record and the briefs of both parties, we find for the State on all issues.

The first assignment of error questions the sufficiency of the evidence to support a finding that the value of the Sako rifle exceeded $150. In effect, Harvey is challenging the sufficiency of the evidence to support the verdict. The value of the property taken must exceed $150 before a conviction for felony theft will lie. Section 45-6-301(4), MCA.

Harvey's contention is without merit. The determination of disputed questions of fact and the credibility of witnesses is within the province of the jury. State v. Bouldin (1969), 153 Mont. 276, 284, 456 P.2d 830, 834. Upon appeal, we will not disturb a verdict if substantial evidence is found to support that verdict. State v. McKenzie (1978), _____ Mont. ____, 581 P.2d 1205, 1226, 35 St.Rep. 759, 785.

We find sufficient evidence of the value of the rifle to support the verdict rendered. At the trial, Marvin Hiatt, owner of a Deer Lodge sporting goods store, testified that the rifle had a current wholesale value of between $175 and $200 and a current retail value of between $200 and $280. Similarly, Theodore Nelson, the owner of the rifle, testified at the trial that he had the rifle appraised at $280. Harvey made no objection to the testimony of either of these witnesses.

The second assignment of error is that the District Court erred in failing to instruct the jury on misdemeanor theft.

Harvey never offered such an instruction at the trial level. In State v. Radi (1975), 168 Mont. 320, 325, 542 P.2d 1206, 1209-1210, we said:

> ". . . Generally, this Court will refuse to rule on issues which were not presented to the district court and this rule is especially applicable to the instant case. The Montana Code of Criminal Procedure, section 95-1910(d), R.C.M. 1947, [now section 46-16-401, MCA] provides in pertinent part:

"'When the evidence is concluded, if either party desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered, and signed by the party, or his attorney, and delivered to the court.'

"The statute is written in mandatory language and therefore should be construed as such. State v. Cook, 42 Mont. 329, 112 P. 537; State v. Dougherty, 71 Mont. 265, 229 P. 735; State v. Sawyer, 71 Mont. 269, 229 P. 734; State v. Donges, 126 Mont. 341, 251 P.2d 254; State v. Maciel, 130 Mont. 569, 305 P.2d 335."

The third assignment of error is that Harvey was denied the right to adequate counsel.

The record does not support the contention that Harvey's court-appointed counsel was inadequate prior to his excusal. The court-appointed counsel assisted Harvey by interviewing witnesses in preparation for trial, subpoenaing witnesses and filing in good faith two motions to dismiss.

Harvey also may not complain that he himself was inadequate at trial. The Sixth and Fourteenth Amendments to the United States Constitution guarantee to an accused the right of self-representation provided the choice has been made knowingly and intelligently. Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.

The record establishes that Harvey made his choice of self-representation with his eyes wide open. Adams v. United States ex rel. McCann (1942), 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275. The District Court repeatedly warned Harvey of the disadvantages of self-representation. In fact, the District Court appointed "standby" counsel to assist Harvey should he so request. Having made his choice of self-representation knowingly and intelligently, Harvey cannot now be heard to complain.

The fourth assignment of error is that the District Court abused its discretion in requiring Harvey to testify in question-answer form.

The mode and order of the presentation of evidence is within the sound discretion of the District Court. Rule 611(a), Mont.R.Evid., provides in pertinent part:

> "(a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth . . ."

The District Court required Harvey to testify in question-answer form to give the State an opportunity to object and avoid the introduction of inadmisssable evidence. Harvey can claim no prejudice from being barred from introducing inadmissable evidence. Once again, the District Court warned Harvey at the outset of the difficulties in representing himself. Moreover, the District Court advised Harvey that he could use "standby" counsel to ask the questions while he testified, but Harvey refused to do so.

The fifth assignment of error is that the State failed to corroborate the testimony of Robert Paulus.

An accused may not be convicted solely on an accomplice's testimony. Section 46-16-213, MCA. State v. Harmon (1959), 135 Mont. 227, 236, 340 P.2d 128, 132, defines accomplice as follows:

> "An accomplice is defined by Chief Justice Brantly as 'one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime.. . . One may become an accomplice by being present and joining in the criminal act, by aiding and abetting another in its commission, or, not being present, by advising and encouraging its commission; but knowledge and voluntary actions are essential in order to impute guilt.' State ex rel. Webb v. District Court, 1908, 37 Mont. 191, 200, 201, 95 P. 593, 597, 15 Ann. Cas. 745, jury tampering; included with citations in 3 Jones on Evidence, 5th ed., §813 at p. 1525."

There is no evidence in the record indicating Paulus knowingly, voluntarily and with common intent united with Harvey in the commission of a crime. Therefore, the State did not have to corroborate Paulus' testimony.

-7-

The sixth assignment of error is that the District Court erred in failing to grant Harvey's motion for a continuance for the purpose of challenging the credibility of Paulus, the State's witness.

After both sides rested, Harvey orally moved the District Court for a continuance so he could subpoena personnel from the Black Hills Pack or the Billings Vocational-Technical School to prove Paulus did not work at either of these businesses as he had testified.

The denial of a motion for a continuance is within the sound discretion of the District Court, and it is not error to deny such a motion unless a clear abuse of discretion is shown. State v. Olsen (1968), 152 Mont. 1, 11, 445 P.2d 926, 932.

Section 25-4-501, MCA, provides:

> "Motion to postpone trial for absence of testimony.
> A motion to postpone a trial on grounds of the
> absence of evidence shall only be made upon affidavit
> showing the materiality of the evidence expected to
> be obtained and that due diligence has been used to
> procure it."

The language of the statute is mandatory and must be construed as such. State v. Radi, supra.

Harvey never filed an affidavit demonstrating materiality or due diligence. In view of Harvey's failure to comply with section 25-4-501, MCA, it cannot be said the District Court abused its discretion in denying the motion for a continuance. State v. Pascgo (1977), _____ Mont. _____, 566 P.2d 802, 804, 34 St.Rep. 657, 659.

Also, the matters sought to be obtained by the motion for a continuance go to the credibility of a witness and not to facts which tend to prove or disprove the allegations of the information. One cannot impeach a witness on a collateral matter. Tigh v. College Park Realty Co. (1967), 149 Mont. 358, 364, 427 P.2d 57, 61.

-8-

The final assignment of error is that the District
Court erred in denying Harvey's motion to dismiss for failure
to grant a speedy trial.

The following is the table of relevant dates and events
set forth in the State's brief.

| DATE | ACTION | TOTAL DAYS ELAPSED |
|------|--------|--------------------|
| 2/16/78 | Information filed | 0 |
| | Arraignment | |
| | Continuance to consult with attorney requested by and granted to defendant | |
| | Defendant released on own recognizance | |
| 2/23/78 | Entry of plea | 7 |
| 4/27/78 | Defendant incarcerated on parole violation charge | 70 |
| 6/22/78 | Motion by defendant to dismiss on grounds of double jeopardy filed | 126 |
| 7/13/78 | Motion to dismiss denied | 147 |
| 9/6/78 | Trial set for 9/19/78 | 202 |
| 9/13/78 | Trial continued | 209 |
| 9/19/78 | Motion by defendant to dismiss for failure to grant a speedy trial filed | 215 |
| 9/21/78 | State's opposition to motion to dismiss filed | 217 |
| | Motion to dismiss denied | |
| | Trial reset for 10/2/78 | |
| 10/2/78 | Trial continued | 228 |
| 10/3/78 | Trial | 229 |
| 10/4/78 | Verdict | 230 |

The right of an accused to a speedy trial is guaranteed
by both the United States and Montana Constitutions. United
States Constitution, Amend. VI; 1972 Mont. Const., Art. II,
§24. The Fourteenth Amendment due process clause imposes the
federal standard, as a minimum, upon Montana. See Dickey v.
Florida (1970), 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26; and
State v. Bretz (1979), ___ Mont. ____, ____ P.2d ____, 36
St.Rep. 1037, 1040.

Each speedy trial case must be considered on an ad hoc
basis. We must balance the conduct of both Harvey and the
State. In balancing such conduct, we must look to four factors:
the length of the delay, the reason for the delay, the defendant's

-9-

assertion of the right and any prejudice to the defendant. Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116-117; State v. Bretz, supra, 36 St.Rep. at 1041.

We will examine each of these four factors individually under the facts of the instant case.

Length of delay. The length of the delay is a triggering device. There is no need to examine the other three factors until some delay which is deemed presumptively prejudicial has occurred. What length will be deemed presumptively prejudicial depends on the facts of each individual case. A longer delay will be tolerated in a complex case than would be tolerated in one involving a simple fact situation. Barker v. Wingo, supra, 407 U.S. at 530-531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; State v. Bretz, supra, 36 St.Rep. at 1041-1042.

In the instant case, the passage of 229 days from the date the information was filed to the date of the trial is sufficient to shift to the State the burden of explaining the reason for the delay and showing absence of prejudice to Harvey. This was not a complex case.

The State asserts that thirty days should be subtracted because of motions made by Harvey. We do not agree. The good faith motions of a defendant are not chargeable to that defendant. State v. Carden (1977), _____ Mont. _____, 566 P.2d 780, 785, 34 St.Rep. 420, 427.

Reason for the delay. Different weights must be assigned to different reasons for the delay. Barker v. Wingo, supra, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; State v. Bretz, supra, 36 St.Rep. at 1042. The State asserts the delay in this case was institutional delay. While institutional delay weighs less heavy than intentional delay by the State, it still

-10-

must be considered. Delay inherent in the system is chargeable to the State. The State bears the burden of bringing a defendant to trial. State v. Puzio and Allen (1979), ____ Mont. ____, ____ P.2d ____, 36 St.Rep. 1004, 1007.

Defendant's assertion of the right. The defendant's assertion of his right is entitled to strong evidentiary weight in determining a deprivation of that right. State v. Bretz, supra, 36 St.Rep. at 1043. Therefore, an accused should take some affirmative action to be entitled to a discharge for delay. The appropriate action is a motion to dismiss for denial of a speedy trial made prior to the commencement of the trial. State v. Puzio and Allen, supra, 36 St.Rep. at 1008. This was done by Harvey.

Prejudice to the defendant. This factor must be weighed with regard to the three interests which the right to a speedy trial is intended to protect. These three factors are (1) avoiding oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused and (3) limiting the possibility of impairing the accused's defense. State v. Bretz, supra, 36 St.Rep. at 1044.

We find no evidence of oppressive pretrial incarceration. Initially, Harvey was released on a recognizance bond. On April 27, 1978, Harvey was incarcerated on a parole violation charge. The grounds for the parole revocation were possession of a weapon, the Sako rifle, and Harvey's drinking habits. Since Harvey's pretrial incarceration was due in part to an unrelated offense, we cannot attribute any prejudice from that imprisonment to the case at hand. We cannot assess the fault by any precise means. See, State v. Bretz, supra, 36 St.Rep. at 1044; and State v. Mielke (1966), 148 Mont. 320, 420 P.2d 155.

-11-

Harvey next contends he suffered undue anxiety and concern while waiting to be brought to trial. Prior to his being charged with felony theft, Harvey had made a new life for himself. He was a successful salesman for Wallin's Ford in Deer Lodge, and the people of that city trusted him. However, as a result of the felony charge and his pretrial incarceration, he lost his job, his income, the public trust and his wife suffered an emotional breakdown.

Harvey's contention is without merit. To a large extent, any emotional stress, economic hardship or public obloguy suffered by Harvey were due to his incarceration for an unrelated offense. Any prejudice suffered from that incarceration cannot be charged against the State. See State v. Bretz, supra; and State v. Mielke, supra.

Harvey contends his pretrial incarceration impaired his ability to prepare a defense. As a result of that incarceration his wife suffered such emotional distress that Harvey could not call her as a witness. Similarly, Harvey could not call his daughter as a witness since she blamed Harvey for her divorce.

Harvey has not shown any factors which would impair his ability to prepare a defense. There is no evidence that any witness died prior to the trial or that any witness suffered an impaired memory due to the delay. The distress within Harvey's family is unfortunate. However, Harvey could have subpoenaed his wife and daughter but voluntarily chose not to do so.

Application. On the balance, we find no excessive delay in bringing this cause to trial. While no one factor is determinative, the presence of prejudice should be weighed heavily in the balancing of all factors. Barker v. Wingo, supra. Harvey has not demonstrated any actual prejudice which is attributable to the State.

-12-

Having found no substance to Harvey's assignments of error, we affirm the conviction entered by the District Court.

_____
                    Justice

We Concur:

_____
          Chief Justice

_____

_____

_____
                 Justices