No. 84-170

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

LEO CHAVEZ,

Defendant and Appellant.

APPEAL FROM: District Court of the Twelfth Judicial District
In and for the County of Hill
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Mark Suagee, Havre, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Ronald W. Smith, County Attorney, Havre, Montana

Submitted on Briefs: Oct. 11, 1984

Decided: November 29, 1984

Filed: NOV 29 1984

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from an order of the District Court of the Twelfth Judicial District, Hill County, denying defendant's motion to dismiss for a lack of a speedy trial, and the trial court's ruling allowing the admission of a pre-trial photographic identification of the defendant. At trial, the jury found the defendant not guilty of burglary, and guilty of felony theft, and he was sentenced to four years in the Montana State Prison.

We affirm.

On the morning of June 15, 1983, Anton Schwan, the lessee of a steel building near the Burlington Northern railroad tracks west of Havre, Montana, discovered that the building had been broken into. The break-in had apparently occurred the night before because Schwan testified that he had been there the previous evening at 8:00 p.m. and had not noticed anything missing. Items stolen from the building were a black and white television set, a stereo system and two roping saddles. Schwan immediately notified the Hill County Sheriff's office of the burglary.

Later that same day, Allen Marden was working at his job for the Burlington Northern Railroad. At about 12:15 p.m. he was in a locomotive stopped near a crossing west of Havre. At that time, he observed a red and white Pontiac LeMans with three occupants proceeding westerly on the gravel road paralleling the tracks. As Marden watched, the car stopped 100 to 150 feet away from him and two men got out. One went down into the ditch and retrieved a saddle out of a bush. They put the saddle into the trunk of the car, and

2

drove off to a nearby mobile home court. Marden testified that he wrote down the personalized phrase "HIDES" on the license plate of the car as it proceeded easterly past him.

Because he felt the activity was suspicious, Marden telephoned his brother Steve, a Hill County deputy sheriff, and told him what he had seen. Steve Marden contacted another deputy, Monte Riechelt, who confirmed that a saddle had been reported stolen. From Alan Marden's identification, the automobile was traced to its owner, John Chance Houle, a jailer at the Blaine County Sheriff's office.

Mr. Houle made a statement to the Hill County Sheriff that he had stopped at Fred Castaneda's trailer to inquire about buying two saddles that he had heard Castaneda wanted to sell. The defendant, Leo Chavez was at the trailer. Houle stated that he, Castaneda, and Chavez got into Houle's car to get the saddle. Chavez was the one who gave directions to, and actually retrieved the saddle. Houle purchased the saddle from Chavez for $10 and a beaded belt, and then took it to his grandfather's ranch on the Rocky Boy Indian reservation. A few days later, Leo Chavez went to a local pawn shop and pawned the belt for $20.

As a result of Houle's statement and Marden's report, the Sheriff's office located the remaining stolen items hidden in the bushes in the same area, about .3 of a mile from the building where they had been stored. On June 20, 1983, both Fred Castaneda and Leo Chavez were arrested and charged with the burglary and theft of these items. Leo Chavez's bond was set at $3,000 and he remained incarcerated in the Hill County jail until August 2, 1983--a period of forty-three days. After his release, defendant Chavez remained in the Havre area until trial on January 19, 1984.

3

At trial, all charges against Fred Castaneda were dismissed by the court upon motion of his defense counsel at the conclusion of the State's case. The jury found Chavez not guilty of burglary and guilty of theft. He was later sentenced to four years in the Montana State Prison.

Prior to trial, on September 29, 1983, the Hill County Attorney filed a notice of readiness for trial and request that trial be set. On December 22, 1983, the county attorney filed a motion requesting the District Court to set a trial date. At the omnibus hearing on January 6, 1984, defendant gave notice that he would raise the speedy trial issue. On January 13, 1984, he filed a motion to dismiss for lack of a speedy trial.

At the hearing on the motion, held on the same day the trial commenced, defendant testified that while he was in jail he entertained thoughts of suicide, and though those urges subsided upon his release, that the long delay had caused him great anxiety. He testified that after his release he found it difficult to find steady employment, and that he felt estranged from the community. Defendant also contended that due to the delay of 214 days in being brought to trial, his ability to present a defense was impaired because he and his witnesses found it difficult to remember the events of June past.

On cross-examination defendant testified that, pending trial, he worked for awhile with a carnival when it came to town, and then found a job at a local cafe. He quit his job at the cafe because the owner gave him a "weird look" after some deputies had come to visit him. As to the estrangement, he admitted that he "kind of got used to it." And finally, he conceded that part of his "anxiety" was due to the fact

4

that there were other criminal charges proceeding against him in Montana, and that he was on probation from a California district court. The record discloses that on July 16, 1983, less than two days after the theft and prior to his arrest for the present charge, defendant had been sentenced by the Hill County District Court for two other previous felonies. The court sentenced him to two concurrent three year terms in the Montana State Prison, but suspended them and put defendant on probation. The court also fined him $2,000 and ordered him to report to the appropriate authorities in California.

During the hearing on the motion to dismiss, the District Court observed that the notice of and motion for trial were timely filed by the State, and that "the only reason this wasn't tried in the fall was because of the heavy trial schedule that [the judge] had." In arguing against the motion to dismiss, the county attorney contended that although he did not affirmatively present evidence, the cross-examination of the defendant had adequately shown that there was not sufficient anxiety or prejudice to mandate a dismissal. Based on this, the District Court denied defendant's motion.

During the trial, the State offered into evidence an identification of the defendant based on a photographic line-up Marden had been shown shortly before the trial. The defendant lodged a general objection, and the court allowed both the identification, and the photographic line-up to be introduced.

Defendant raises two issues on appeal:

(1) That the District Court erred in denying the motion to dismiss for a lack of speedy trial; and

(2) that the District Court erred in allowing the State to admit the pre-trial photographic identification of the defendant.

Any person accused of a crime is guaranteed the fundamental right to a speedy trial by the Sixth Amendment to the United States Constitution, which is made applicable to the states by the Fourteenth Amendment. Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1. The test to be applied to determine whether the speedy trial right has been violated was set forth in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. This test has been applied by this Court, and was stated in State ex rel Briceno v. Dist. Ct. (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-4:

> "These cases involve a sensitive balancing of four factors, in which the conduct of the prosecution and defendant are weighed in determining whether there has been a denial of the right to a speedy trial. The four factors to be evaluated and balanced are:
>
> "1) Length of delay;
>
> "2) reason for delay;
>
> "3) assertion of the right .by defendant; and
>
> "4) prejudice to the defendant."

The first factor, the length of delay is the "trigger" to the speedy trial inquiry. There is no need to examine the other three factors unless some delay deemed presumptively prejudicial has occurred. State v. Harvey (1979), 184 Mont. 423, 603 P.2d 661, and the delay tolerated varies with the complexity of the case. Harvey, 184 Mont. at 433-434, 603 P.2d at 667; Barker, 507 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 ("the delay that can be tolerated for an

ordinary street crime is considerably less than for a serious complex conspiracy charge.")

The delay here, 214 days, is long enough to trigger the speedy trial inquiry. See State v. Ackley (Mont. 1982), 653 P.2d 851, 39 St.Rep. 2091, (257 days); State v. Fife (Mont. 1981), 632 P.2d 712, 38 St.Rep. 1334 (195 days); State v. Freeman (1979), 183 Mont. 334, 599 P.2d 368 (207 days); State v. Cassidy (1978), 176 Mont. 385, 578 P.2d 735 (246 days). This delay gives rise to a presumptive deprivation of defendant's speedy trial right, and shifts the burden to the State to give reasons why the trial should proceed. State v. Ackley, supra; State v. Harvey, supra. In this respect, the State must either give a reasonable excuse for the delay, or show that the defendant was not prejudiced thereby. If there is both excuse and prejudice, those two factors must be balanced.

In State v. Ackley, supra, we were confronted with a remarkably similar situation. There, the trial was delayed for a period of 257 days because of the trial court's heavy schedule. The defendant in Ackley had spent forty-one days in jail, and alleged the delay had prejudiced him in his ability to present his defense, and in the marital difficulties and anxiety it caused. The District Court denied Terry Ackley's motion to dismiss and this Court affirmed.

The speedy trial right is primarily designed to protect the accused from oppressive tactics of the prosecution, Barker . Other reasons such as institutional delay weigh less heavily against the State in the balancing process, Ackley. Nonetheless, the State has the duty to bring the accused to trial and is ultimately responsible for any delay.

Although institutional delay weighs less heavily against the State, it is the policy of this Court to gradually reduce our tolerance for this excuse, and to begin according it full weight. State v. Fife, 632 P.2d at 714, 38 St.Rep. at 1336.

Here, the defendant asserted his right in a timely and proper fashion. The motion was made before trial and the hearing was had before the trial commenced. The portion of the delay that can be attributed to the defendant is seven days. Conversely, the State also indicated its readiness for trial in a timely fashion. There were no oppressive tactics employed. Consequently, the cause for delay is narrowed to pure institutional delay, and only that may be balanced against the defendant's prejudice.

In Barker v. Wingo, supra, the United States Supreme Court identified three interests of a defendant which may be prejudiced by a delay in coming to trial. The right is designed " . . . (i) to prevent oppressive pre-trial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

If the delay is sufficient to trigger the speedy trial inquiry, then it is presumptively prejudicial to the defendant. Barker v. Wingo, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. In Moore v. Arizona (1973), 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183, the United States Supreme Court held that the defendant is not required to affirmatively prove prejudice. Thus, the State has the burden to rebut the presumption of prejudice or forward a reason for the delay that outweighs it.

8

In _Ackley_, we held that the burden on the State "to show lack of prejudice becomes considerably lighter in the absence of prejudice to the appellant" 653 P.2d at 854, 39 St.Rep. at 2094. If the State has no justification for the delay, or cannot show that the defendant has not been prejudiced by it, the defendant is entitled to dismissal. But, if the defendant's prejudice rests merely on this presumption, he must meet any evidence presented by the State that outweighs the presumed prejudice. At that point, the defendant is entitled to dismissal only if he presents evidence of prejudice that exceeds in weight the State's proof.

Chavez pointed out his forty-three day incarceration and alleged that the delay caused him great anxiety and impaired his ability to mount a defense. In _Ackley_, the defendant was incarcerated for forty-one days prior to trial. We did not find that to be, under the circumstances, oppressive incarceration. Here, defendant Chavez alleged that his incarceration caused him great anxiety and that he entertained thoughts of suicide. On cross-examination, the county attorney brought out the fact that a great deal of the anxiety Mr. Chavez was feeling at that time was not necessarily attributable to his incarceration. His stay in jail simply "brought up a lot of worries," but they were not all directly caused by his present situation. And naturally we are to expect a certain amount of anxiety and concern that is inherent in being accused of a crime. State v. Collins (1978), 178 Mont. 36, 50, 582 P.2d 1179, 1186. In addition, the defendant had received two suspended prison terms, just two days after the theft occurred and four days prior to his arrest. A portion of any anxiety he may have felt certainly

was attributable to the possibility that the order suspending the prison terms would be revoked if he were to be convicted again. We find that, as far as the term in jail, the State adequately showed that there was not oppressive incarceration.

Defendant's allegations that he was made anxious by the delay and that he felt estranged from the community, closely parallels the prejudice alleged by the defendant in Ackley. There, the defendant alleged that the delay caused him marital problems and restricted his right to free speech. In Ackley, the defendant did no more than state in a conclusory fashion his anxiety and prejudice, and we held that the State's excuse outweighed the presumed prejudice. Again, this case is remarkably similar. Chavez admitted that a great deal of the anxiety he was feeling was due to the other criminal actions against him, and that he "kind of got used to" the comments and stares of others in the community. The trial judge saw and heard Chavez on cross-examination when the county attorney attempted to rebut and discredit his allegations of prejudice. We must defer to his findings if they are supported by substantial evidence. Here, the State effectively showed an absence of prejudice to the defendant and therefore met its burden of proof.

Finally, Chavez alleged that the delay impaired his ability to defend himself. The State, through cross-examination showed an absence of prejudice. There was no memory loss on the part of any witness and no difficulty to the defendant in contacting them. The defendant called only one witness, Alan Marden, on his behalf, and then only for a cursory examination in regards to the photographic line-up. Again, the facts are strikingly similar to Ackley,

10

as is our conclusion: the defendant did not meet the State's proof, and was not prejudiced by the delay.

We find that <u>Ackley</u> is controlling in this case and we conclude that defendant was not denied his right to a speedy trial.

Chavez next argues that it was error for the District Court to allow the county attorney, Mr. Smith, to produce an in-court identification of him based upon an earlier photographic identification. The allegedly defective exchange went as follows:

> "Q [By Mr. Smith] Mr. Marden, I am going to show you what is marked as proposed exhibit E and ask you if you have seen that before?
>
> "A Yes.
>
> "Q And the purpose of this exhibit was for what reason?
>
> "A To see if I could identify any of the occupants of the car.
>
> "Q And did you have an opportunity then to examine this to see if you could, and take your time?
>
> "A Yes. I was.
>
> "Q And were you advised in advance the names of any individuals who were placed within this?
>
> "A No. I wasn't.
>
> "Q And at this time, or at the time that you examined that, were you able to indicate to [sic] individuals out of that lineup, or that photographic?
>
> "A Yes. I was.
>
> "Q And in referring to that, what picture numbers did you select?
>
> "A Number 1 and number 6.
>
> "MR. LITTETVEDT: Your Honor, I am going to object to this testimony at this point

11

in time and have the objection noted for the record.

"MR. SUAGEE:    I would like to join in that objection.

"THE COURT:  Very well.

"MR.  SMITH:    The  objection  if  [sic] overruled?

"THE COURT:  Overruled."

Chavez alleges that this testimony was improper because his due process rights were violated in that the existence of the photographs were not disclosed to Chavez prior to trial, and this non-disclosure prejudiced his defense.

The record discloses that Hill County has an "open file" policy in all criminal matters.  We note here that defendant does not allege that the photograph line-up was not in the file or was otherwise hidden from him.

The difficulty we have is with the specificity of defendant's objection.  Counsel for defendant Castaneda said no more than "I am going to object," and counsel for defendant Chavez stated "I would like to join in that objection."  We have previously held that broad, generalized objections of this type are insufficient to preserve an error for appeal, State v. Close (Mont. 1981), 623 P.2d 940, 38 St.Rep. 177; State v. Bretz (1979), 185 Mont. 253, 605 P.2d 974; State v. Sullivan and DePue (1979), 182 Mont. 66, 595 P.2d 372; State v. Kates (1934), 97 Mont. 173, 33 P.2d 578.

There was sufficient other testimony identifying the defendant, or linking him to the stolen property, for the jury to find as it did.  John Houle earlier identified the defendant from the same photographic line-up that Marden saw just prior to trial and defendant's counsel did not object to that testimony.  The testimony of Officer Riechelt, and John

12

Erhardt, owner of the pawn shop where defendant pawned the beaded belt, and other testimony of Alan Marden, all implicate the defendant. His counsel was able to, and did cross-examine the various investigating officers about the photographic line-up and other aspects of the investigation, and counsel did not object to the photographic line-up when it was offered and received as an exhibit.

Finally, the use of a photographic line-up is not, by itself, unconstitutional. The use of such devices for the investigation of crimes is an accepted and normal method of law enforcement. The defendant is not even required to be present or represented by counsel during such a proceeding, Ash v. United States (1973), 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619; Mata v. Summer (9th Cir. 1979), 611 F.2d 754. We will only bar the use of photographic line-ups if the defendant can show that the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Mata v. Summer, supra, citing Simmons v. United States (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. Defendant's counsel cross-examined Officer Riechelt and Alan Marden at length about the identification procedure, and could come up with no evidence of unusual suggestiveness. Neither can we, on a review of the record, find any such evidence.

The orders of the District Court are affirmed.

_____
Justice

We concur:

_Frank X Haswell_
Chief Justice

_John Conway Harrison_

_____

_____

_____

_____

Justices

14

Justice John C. Sheehy, specially concurring:

I would hold that Chavez is not entitled to a dismissal on the speedy trial issue, but not for the reasons cited by the majority.

Because of his other problems with the courts, I am not persuaded that Chavez really wished for a speedy trial. This was a compelling factor to the United States Surpreme Court in Barker v. Wingo (1972), 407 U.S. 514. In Barker we were warned against mechanically ticking off the factors there enumerated and boiling the issue down to the simple question of prejudice. Prejudice should always be presumed, and for good reasons, outlined in U.S. v. Marion (1971), 404 U.S. 307, 320.

_____
                    Justice

Mr. Justice Daniel J. Shea and Mr. Justice Frank B. Morrison, Jr., dissent and will file a written dissent later.