No. 88-180

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

JERRY R. WIMAN,

        Defendant and Appellant.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Roy C. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Larry Jent, Bozeman, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Robert F.W. Smith, Asst. Atty. General, Helena
        A. Michael Salvagni, County Attorney, Bozeman, Montana
        Marty Lambert, Deputy County Attorney, Bozeman

_____

Submitted on Briefs: Dec. 2, 1988

Decided: February 17, 1989

Filed:

FILED
'89 FEB 17 PM 2 08
ED SMITH, CLERK
MONTANA SUPREME COURT

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Jerry Wiman, defendant, appeals from a judgment convicting him of felony sexual assault. Wiman was found guilty in a jury trial before the Eighteenth Judicial District Court, Gallatin County. We affirm.

Wiman raises the following two issues on appeal:

(1) whether Wiman was deprived of the right to a speedy trial; and,

(2) whether the prosecutor improperly commented on Wiman's failure to testify.

On December 10, 1986, an information was filed charging the appellant with one count of sexual assault, a felony, in violation of § 45-5-502(1), MCA. A jury trial began on April 28, 1987, and concluded on April 30, 1987. The jury was unable to reach a verdict and the presiding judge declared a mistrial. The Gallatin County Attorney then asked that the case be reset for trial. Trial was reset for July 20, 1987, and continued until September 1, 1987. The reason for this continuance was the absence from the state of two key witnesses for the prosecution.

On August 13, 1987, District Judge Thomas Olson recused himself from presiding in this case and District Judge Douglas Harkin assumed jurisdiction of the case.

On August 25, 1987, appellant filed a motion for peremptory substitution of Judge Harkin.

On September 17, 1987, District Judge Roy Rodeghiero assumed jurisdiction of the case.

On November 17, 1987, a hearing was held on defendant's motion to dismiss for denial of speedy trial. Evidence was presented to the court and attorneys argued the motion. The

court, ruling from the bench, denied Wiman's motion to dismiss.

On November 17, 1987, the second jury trial began. On November 19, 1987, the jury found Wiman guilty of felony sexual assault. On January 12, 1988, the court sentenced Wiman to ten years in the Montana State Prison. The court then entered an order setting Wiman free on bail pending this appeal.

I

The first issue raised on appeal is whether the appellant was deprived of the right to a speedy trial.

Any person accused of a crime is guaranteed the fundamental right to a speedy trial by the Sixth Amendment to the United States Constitution, which is made applicable to the states by the Fourteenth Amendment. State v. Chavez (1984), 213 Mont. 434, 691 P.2d 1365. "The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him. '[T]he essential ingredient is orderly expedition and not mere speed.'" United States v. Marion (1971), 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468, 474 (citing Smith v. United States (1959), 360 U.S. 1, 10).

In speedy trial determinations, a factor to be considered is the length of the delay in getting to trial. State v. Armstrong (1980), 189 Mont. 407, 616 P.2d 341; State v. Harvey (1979), 184 Mont. 423, 603 P.2d 661. However, there is no need to examine other factors unless there has been some delay which is deemed presumptively prejudicial. The other factors we refer to are the factors enunciated in Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117. In analyzing the validity of a

3

claim of lack of speedy trial, the Court investigates and balances the four factors set out in <u>Barker</u>:

> Length of delay, the reason for the delay, the defendant's assertion of his right [to a speedy trial], and prejudice to the defendant.

Length of delay is of primary importance. Unless it is sufficiently long to be deemed presumptively prejudicial to the defendant, there is no need to consider the other factors. What length will be deemed presumptively prejudicial depends on the facts in each individual case. State v. Robbins (1985), 708 P.2d 227, 42 St.Rep. 1440; State v. Worden (1980), 188 Mont. 94, 611 P.2d 185. There is no need to determine other factors unless there has been some delay which is deemed presumptively prejudicial. <u>Armstrong</u>, 616 p.2d at 351.

When appellant's second trial began on November 17, 1987, 201 days had passed since the conclusion of the first trial. The chronology is as follows:

| Event | Date |
|---|---|
| Information filed | 12/10/86 |
| First Jury Trial | 4/28/81-4/30/87 |
| Court resets trial for 7/20/87 | 5/28/87 |
| State moves for Continuance, and Court resets trial for 9/1/87 | 7/13/87 |
| Judge Olson excuses himself from presiding in this case, Judge Harkin assumes jurisdiction | 8/13/87 |
| Defendant moves for substitution of Judge Harkin | 8/25/87 |
| Judge Rodeghiero assumes jurisdiction & sets trial for 11/17/87 | 9/17/87 |
| Defendant's jury trial begins | 11/17/87 |

Defendant's jury trial concludes        11/19/87

The State of Montana asserts that it is responsible for 123 days of the delay, the time period between May 1, 1987 and September 1, 1987 and that the appellant is responsible for 78 days of the delay for the time period of September 1, 1987, when the trial was necessarily vacated by Wiman's substitution of Judge Harkin, until November 17, 1987, the date the new district judge set for trial.

Wiman asserts that the delay is 342 days by computing the delay from the date of the arraignment December 16, 1986, to the second trial date set for November 17, 1987. We do not agree. In State v. Sanders (1973), 163 Mont. 209, 214, 516 P.2d 372, 375, this Court adopted the rule from the American Bar Association Project on Minimum Standards for Criminal Justice:

"The time for trial should commence running . . .

. . .

(c) if the defendant is to be tried again
following a mistrial, . . . from the date of the
mistrial, order granting a new trial, or remand."

Therefore, in calculating the delay in this appeal we begin by counting the day after the first trial.

We agree with the State that the length of the delay caused by the State is not sufficiently long to trigger further inquiry. Therefore, this Court will not consider the other factors set out in Barker.

The appellant's second trial began 201 days after the conclusion of his first two-day trial on April 30, 1987, but the date was reset for September 1, 1987, when the Gallatin County Attorney moved for a continuance because two key state witnesses would be out of the state at the time set for trial. These witnesses were to give vital testimony

attesting to the credibility of the nine-year-old assault victim in this case. Since defendant's counsel had put the victim's credibility in question, the date became impracticable for the State's case without these witnesses.

On August 13, 1987, two weeks before the second trial was to begin, Judge Olson excused himself from presiding in this case and Judge Harkin immediately assumed jurisdiction for the trial that was to begin on September 1, 1987. However, a further delay resulted when on August 25, 1987, six days before the trial date, the defendant moved for a substitution of Judge Harkin. On August 31, 1987, Judge Olson signed the order calling in Honorable Roy C. Rodeghiero and sent out an invitation to him to assume jurisdiction. On September 17, 1987, Judge Rodeghiero signed and mailed the assumption of jurisdiction which arrived at the Gallatin County Clerk and Recorder's Office on September 18, 1987. District Judge Rodeghiero put the stalled legal machinery back into motion by setting a trial for November 17, 1987. This gave the district judge two months to acquaint himself with the record and issues of the Wiman case, and give the parties time to reschedule briefs and witnesses. Therefore, the two months between the assumption of jurisdiction by Judge Rodeghiero and the date set for the new trial is reasonable under the circumstances.

The defendant is responsible for the time between August 25, 1987, when he moved for a substitution of Judge Harkin, and November 17, 1987, when the new trial, set by Judge Rodeghiero began. The trial date of September 1, 1987, would have been adhered to but for the substitution of Judge Harkin at defendant's request. Defendant's motions caused 82 days of a 201 day delay. The State caused 119 days of delay because of unavailability of key witnesses.

We have focused our decision on this 119 days. This amount of time is not long enough to be deemed presumptively prejudicial.

Wiman was free on bail during this time and the length of his delay was much shorter than in Armstrong, where the delay was three and one-half years from the time of Armstrong's original conviction to his second conviction. In addition, Armstrong was incarcerated during this delay. Wiman was not.

The length of delay is the "trigger" factor to the speedy trial inquiry. There is no need to examine other factors unless some delay presumptively prejudicial has occurred. Chavez, 691 P.2d at 1369; Harvey, 603 P.2d at 667. The delay here, 119 days, is not enough to trigger the speedy trial inquiry. Compare, Armstrong, (three and one-half year delay, 108 days attributable to the state), with Fitzpatrick v. Crist (1974), 165 Mont. 382, 528 P.2d 1322 (seven-month delay).

The speedy trial right is primarily designed to protect the accused from oppressive tactics of the prosecution. Barker, 407 U.S. at 529. The 119-day delay in this cause is not sufficiently long to be deemed presumptively prejudicial, nor was the delay caused by oppressive tactics by the State. There is no showing by defendant that the State intentionally delayed to gain some tactical advantage over appellants or to harass them. Vacation of this order would be required if it were shown that, "the pre-indictment delay in this case caused substantial prejudice to appell[ant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." Marion, 404 U.S. at 324. We, therefore, hold that the appellant's right to a speedy trial was not violated.

7

## II

The second issue before this Court is whether the prosecutor improperly commented in jury argument on the defendant's failure to testify.

Appellant contends that the Gallatin County Attorney's summation contained several comments on the appellant's failure to testify and requires a new trial. It is a settled rule that the prosecutor may not direct attention to the failure of a defendant charged with a criminal offense to testify. State v. Gladue (1984), 208 Mont. 174, 677 P.2d 1028; United States v. Republic. Steel Corp. (6th Cir. 1974), 491 F.2d 315; Knowles v. United States (10th Cir. 1955), 224 F.2d 168. However, in Republic Steel, the Court explains that Knowles held:

> "It is concedely improper and reversible error to comment on the failure of a defendant to testify in his own behalf, and the test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. 224 F.2d 168, 170."

Republic Steel also directs:

> "That Government counsel may direct the jury's attention to the fact that the evidence against the defendant is uncontradicted, especially when the facts in issue could be controverted by persons other than the defendant."

491 F.2d at 315. (citing Doty v. United States (10th Cir. 1968), 416 F.2d 887, vacated on other grounds sub nom., Epps v. United States (1971), 401 U.S. 1006, 91 S.Ct. 1247, 28 L.Ed.2d 542).

In the course of argument to the jury, the deputy county attorney made the following argument:

> . . . Detective Lessley asks, "How does she learn all these things?" And here is what the defendant told Detective Lessley on October 3: "She learned

8

them from the neighbor's kids, one of whom is five and one of whom is eight and the mother, their mother, who lives next door, she learned them from seven-year-olds at school; she learned them from Playboy magazine; she learned from watching R-rated movies; she learned them from watching X-rated movies, and she learned them from her own brother. Then he says--quoted by Detective Lessley--'Most of what I say is true' not all of it, 'Most of what I say is true, but that's one thing I wouldn't lie about.'

Did defendant say he thought she was coached, thought that maybe somebody's telling her to say these things? (Whereon Mr. Lambert indicates in the negative.)

(Defense counsel) Objection, Your Honor, comment on non-testimony by Defendant.

THE COURT: Alright, Mr. Lambert, stay away from that area.

MR. LAMBERT: Yes, Your Honor.

In the defendant's brief on appeal, defendant's counsel points to several other instances in the jury argument by the prosecuting attorney, where the statement was made that the evidence was uncontradicted. It is difficult to tell from the record whether the possibility of contradiction would come from other witnesses, or from the defendant himself. At any rate, when those arguments were being made, no objection was made by defense counsel and the District Court was not given an opportunity, if the necessity existed to admonish the jury to ignore the argument, or to give a curative instruction nor was any motion made for mistrial.

There is no showing by appellant here that there is a reasonable possibility that the comments complained of might have contributed to the conviction. There was no objection made at trial, no request for an in-chambers objection to the language used in prosecutor's summation and no motion for a

9

mistrial. Section 46-20-104, MCA, provides that failure to make a timely objection during trial constitutes a waiver of the objection.

It is significant that defendant made only one objection during the prosecutor's summation. That objection was about prosecutor's reference to the defendant's accusation during the second trial that the victim had been coached. The prosecutor reminded the jury that the defendant did not say the victim had been coached when defendant was initially interrogated by Detective Lessley of the Bozeman Police Department. We believe that this was not a comment on defendant's refusal to take the stand.

Although use against a criminal defendant of silence maintained after receipt of governmental assurances is barred by Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 this directive does not apply to language that merely inquires into prior inconsistent statements. Such comment makes no unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. Anderson v. Charles (1980), 447 U.S. 404, 408, 100 S.Ct. 2180, 2188, 65 L.Ed.2d 222, 226. As to the subject matter of his statements the defendant has not remained silent at all. Wiman was given the Miranda warnings and he did waive his rights and chose not to remain silent when interrogated by Detective Lessley. What he said may be and was used against him in the prosecutor's summation. Prosecutor's objected to remark does not refer to Wiman's exercise of his right to remain silent. Rather, it asks appellant's counsel, who impeached the young victim with her testimony in the first trial, and alleged that she was being coached by comparing her testimony with her inconsistent statements in the second trial, why the appellant didn't tell Detective Lessley that in the initial

10

interrogation the girl was coached as his counsel was now asserting. Prosecutor's summation remarks were not designed to draw attention to appellant's silence, but to remind the jury that appellant voluntarily spoke to Detective Lessley after receiving <u>Miranda</u> warnings and that his counsel's present assertion about coaching was inconsistent with defendant's prior statements.

After reading the entire closing statement, we find only this one objection. We find no objection to any other comments made by the prosecution. Therefore, we find no error in regard to the prosecutor's comments in light of the fact that the trial judge did all that he was asked to do when he sustained objection and warned the prosecutor to "stay away from that area." Read in context, it is clear that those comments were not intended to comment on defendant's failure to testify in his own behalf.

If defendant's counsel believed that these comments were directed at the defendant's failure to testify it was incumbent upon him to make an objection to the comments. As a general rule, this Court will not entertain issues not raised at trial. State v. Wilkins (Mont. 1987), 746 P.2d 588, 44 St.Rep. 1794; State v. Goddard (Mont. 1987), 734 P.2d 680, 44 St.Rep. 551.

Finding no error, we conclude that the conviction of Jerry Wiman should be and is affirmed.

_____
                                     Justice

We Concur:

_____

_____

_____

_____
Justices

11