No. 90-460

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

JERRY L. HEFFERNAN,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          C.F. Mackay, Public Defender Project Office,
Anaconda, Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General, Helena, Montana

          James Yellowtail, Assistant Attorney General,
Helena, Montana

          Christopher Miller, County Attorney, Deer Lodge,
Montana

FILED

APR - 4 1991

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: February 28, 1991

Decided: April 4, 1991

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

The District Court of Powell County found the defendant guilty of the crime of escape, a felony, in violation § 45-7-306, MCA. Defendant filed a motion to dismiss for lack of a speedy trial. The court denied the motion and this appeal followed. We affirm.

The sole issue for review is whether defendant was deprived of the right to a speedy trial.

On August 10, 1989, following an August 5 departure from the Montana State Prison, Heffernan was charged by Information with the offense of escape, in violation of § 45-7-306, MCA. Heffernan was arraigned on August 17, 1989, and pled not guilty. Thereafter, on October 16, 1989, the State filed a motion to set a trial date and trial was scheduled for November 30, 1989. The bench trial was continued until April 19, 1990, due to various delays which we discuss below. The bench trial was held on a set of stipulated facts which simply stated that Jerry Heffernan, defendant, escaped from the Montana State Prison on August 5, 1989 and turned himself in, on the following day, to the Gallatin County Sheriff. Additional facts pertinent to the speedy trial issue before us are discussed below.

Following the bench trial, the court convicted Heffernan of escape and sentenced him to three years in prison, with one year suspended, and ordered the sentence to run consecutively with the term of the sentence Heffernan served at the time of his escape.

The sole issue before this Court is whether Heffernan was deprived of the right to a speedy trial.

2

As an introduction, any person accused of a crime is guaranteed the fundamental right to a speedy trial by the Sixth Amendment to the United States Constitution, which is made applicable to the States by the Fourteenth Amendment. State v. Chavez (1984), 213 Mont. 434, 691 P.2d 1365. Both parties recognize that the primary authority in any speedy trial analysis issue is Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. We have set out, in detail, the parameters of a proper speedy trial analysis under the Sixth Amendment, and the theoretical foundations of the four factor balancing approach of Barker, in State v. Curtis (1990), 241 Mont. 288, 299, 787 P.2d 306, 313 and State v. Hall (Mont. 1990), 797 P.2d 183, 185-86, 47 St.Rep. 1501, 1504. In Montana, the four Barker factors which we must evaluate and balance, with consideration given to the conduct of the prosecution and the accused, respectively, when analyzing speedy trial issues, are:

1) length of delay;
2) reason for delay;
3) assertion of the right by the defendant; and
4) prejudice to the defendant.

Hall, 797 P.2d at 185-86. We shall now proceed directly to the outcome arrived at by simply applying, within defined parameters, the factors of the analytical framework set forth in Barker.

I

LENGTH OF DELAY

The first element, the length of the delay, is of primary importance. Our analysis comes to an abrupt halt if the length of the delay is not sufficiently long to trigger a presumption of

3

prejudice. State v. Wiman (1989), 236 Mont. 180, 182, 769 P.2d 1200, 1201. On the other hand, if the length of the delay is presumptively prejudicial, then further inquiry is warranted. What length will be considered presumptively prejudicial depends on the facts of each individual case. The length of a delay which we will consider in any given case is directly proportional to the complexities of the case. State v. Harvey (1979), 184 Mont. 423, 434, 603 P.2d 661, 667. Barker, 407 U.S. at 530-31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Proper calculation of the length of the delay, for purposes of determining whether the delay has created a presumption of prejudice, requires us to consider the total pretrial delay without separately considering the delay attributable to either party. Curtis at 299, 787 P.2d at 313.

Here, defendant was arrested and charged with the crime of escape. This was not a complex case. Defendant's trial on his escape charge was delayed for a total of 256 days from the date of his arrest on August 6, 1989, to the trial date on April 19, 1990. We find, and the parties agree, that this total delay of 256 days between arrest and trial triggers a rebuttable presumption of prejudice. See State v. Palmer (1986), 223 Mont. 25, 27-8, 723 P.2d 956, 958 (256 days held sufficient to require further inquiry), and Hall, 797 P.2d at 187 (207 days held sufficient), and State v. Bartnes (1988), 234 Mont. 522, 528, 764 P.2d 1271, 1275 (175 days held sufficient); compare State v. Wiman (1989), 236 Mont. 180, 184, 769 P.2d 1200, 1203 (119 days of allocated delay held insufficient). Therefore, further inquiry into the remaining Barker factors is required. Furthermore, the State has the burden

4

of rebutting the presumption by providing a reasonable explanation for the delay and showing that the defendant was not prejudiced.

II

REASONS FOR THE DELAY

Different weights must be assigned to different reasons for the delay. Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; Curtis at 302, 787 P.2d at 315. In considering the reasons for the 256-day delay, we shall allocate the delay by incorporating into this element arguments of how much delay is separately attributable to each party. Naturally, although it is not the case here, if the delay was entirely the cause of the defendant, then defendant's speedy trial argument is without merit. State v. Wirtala (1988), 231 Mont. 264, 268, 752 P.2d 177, 180. The State contends that Heffernan is directly responsible for 140 days of the 256-day delay and asserts that it is only responsible for the remaining 116 days. Heffernan denies this and contends that the State must bear complete responsibility for the total delay. The State argues that 140 days of the delay for the time period from November 30, 1989, the initial trial date, until April 19, 1990, the actual trial date, is attributable to Heffernan because he actively avoided trial during this period, citing Curtis at 301, 787 P.2d at 314.

The record indicates that Heffernan was arrested on August 6, 1989. The Powell County Attorney, Mr. Christopher G. Miller, filed an information on August 10,1989, charging Heffernan with the crime of escape. On October 16, 1989, Mr. Miller moved the District Court to set the trial date. Heffernan's case was initially set

5

for trial on November 30, 1989. A November 30, 1989 entry in the District Court Journal, on page #180, states as follows:

> STATE OF MONTANA, Plaintiff -vs- GUS GARDNER, Defendant
> STATE OF MONTANA, Plaintiff -vs- JERRY L. HEFFERNAN, Defendant
>
> Public Defender Conde F. Mackay appears on the two above entitled companion cases and advises that defendant just yesterday rejected the plea bargaining in each case. In fact it is still not decided for certain if this case will go to trial as set for today. Court wonders if these cases could be tried together. Mr. Mackay will check on this. County Attorney Christopher G. Miller who is present representing the State moves to consolidate.

The record shows that Heffernan rejected a prior negotiated plea agreement the day before trial. This tactic left the State with insufficient time to marshal its evidence for trial. Due to Heffernan's actions in waiting the day before trial to reject the plea, which had already been negotiated and agreed upon, the State was forced to request a continuance. The trial was continued until March 26, 1990. We shall call this 117-day delay, from November 30, 1989 until March 26, 1990, "delay #1." On March 26, 1990, due to a backlog of cases pending in the District Court, this case was continued until April 5, 1990. This 9-day institutional delay, from March 26, 1990 until April 5, 1990, shall be referred to as "delay #2." The record reflects that, on the day before the April 5 trial, Heffernan filed a motion to dismiss for lack of a speedy trial, along with a motion for appointment of new counsel and a motion to sever his case from a companion case. On April 5, 1990, the District Court heard arguments pertaining to Heffernan's motions and thereafter denied them on April 17, 1990. On April 19, 1990, a bench trial was held on stipulated facts and the District Court found Heffernan guilty as charged. We shall call this final

14-day delay, from April 5 until April 19, "delay #3."

We find that Heffernan is responsible only for delay #1, or 117 days of the 256 day delay, and the State is charged with the remaining 139 days.[1] Heffernan is responsible for delay #1 because he caused it by rejecting the prior negotiated plea agreement. This rejection forced a continuance of the trial. The record shows that, but for Heffernan's rejection, the trial would have proceeded, as scheduled, on November 30, 1989. Instead, the trial was continued until March 26, 1990. Although the State requested the continuance, it was caused solely by Heffernan's own actions and so the delay is chargeable to Heffernan, not the State. Conversely, delays #2 and #3 are chargeable to the State. These delays were institutional in nature, caused by circumstances over which Heffernan had no control, including trial preparation and a backlog of pending cases. "Delay inherent in the system is chargeable to the State" because the State bears the burden of bringing a defendant to trial. Harvey at 34, 603 P.2d at 667. For this reason, these delays, totalling 139 days, are chargeable to the State. The State asserts that delay #3 was caused by the motions which Heffernan made prior to the April 5, hearing and, thus, this delay should be charged against Heffernan. We disagree.

Considering that portion of the pretrial delay which is chargeable to the State, we note that the speedy trial is primarily designed to protect the accused from oppressive tactics of the

---

[1]This is not to suggest that all delays not charged to defendant are automatically charged to the State--because this is simply not the case. See State v. Carden (1977), 173 Mont. 77, 87, 566 P.2d 780, 785.

7

prosecution. <u>Barker</u>, 407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116. The question is whether the "prosecution was pursued with reasonable diligence" during that time of delay for which the State was charged. State v. Grant (1987), 227 Mont. 181, 185, 738 P.2d 106, 109. "The essential ingredient is orderly expedition and not mere speed." United States v. Marion (1991), 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468, 474 (citing Smith v. United States (1959), 360 U.S. 1, 795 S.Ct. 991, 3 L.Ed.2d 1041). Vacation of the District Court's order would be required if it were shown that, "the pre-indictment delay in this case caused substantial prejudice to appell[ant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." <u>Marion</u>, 404 U.S. at 324, 92 S.Ct. at 465, 30 L.Ed.2d at 481. The 139-day delay attributable to the State was not caused by oppressive tactics by the State. There is no showing by Heffernan that the State intentionally delayed to gain some tactical advantage over Heffernan or to harass him. We find that the reason for the State's 139-day delay was that such delays are inherent in the system and, thus, institutional in nature. We point out that institutional delays, such as these, weigh less heavily against the State in the <u>Barker</u> balancing process than intentional delays resulting from oppressive tactics. State v. Palmer (1986), 223 Mont. 25, 28, 723 P.2d 956, 959. With this in mind, our next task is to balance the other <u>Barker</u> factors against the harm caused by the inherent and institutional nature of the 139-day delay.

ASSERTION OF THE RIGHT

We find, and the State concedes, that Heffernan satisfied the third element by moving to dismiss on speedy trial grounds on April 4, 1990, before this case was brought to trial.

IV

PREJUDICE TO DEFENDANT

The primary interests which lie at the heart of this factor are set forth in Barker:

> A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

Barker, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 101 and Hall, 797 P.2d at 187. Applying these interests to the facts of this case, we hold that Heffernan was not prejudiced by the State's delay in bringing his case to trial.

We find no evidence of oppressive pretrial incarceration since Heffernan was an inmate in the Montana State Prison during the entire subject pretrial period due to an unrelated conviction. He therefore did not suffer any prejudice from pretrial incarceration.

Regarding the second interest we must consider, Heffernan

alleges that he has suffered anxiety and concern as a result of the pretrial delay. We have recognized that "[t]he existence of anxiety or emotional distress is notoriously difficult to prove." Curtis at 303, 787 P.2d at 316. Here, the record contains no facts or proof conclusively showing that anxiety and concern have been caused to Heffernan. However, various statements in Heffernan's brief support the conclusion that Heffernan has likely been subject to at least some anxiety and concern because of the pretrial delay. In his brief, Heffernan alleges that he has been held in closer custody, denied parole, and denied the opportunity to dispose of a Wyoming detainer by virtue of the delay. We find, under these circumstances, that at least some prejudice in the nature of anxiety and concern can be presumed to have occurred.

As for the third and most important of the interests outlined above, we find that the delay did not hamper, impair or otherwise prejudice the defense. This was not a complex case involving a complicated fact pattern. The bench trial for the escape crime proceeded on a very brief and concise paragraph of stipulated facts. Furthermore, Heffernan did not allege that his defense was prejudiced nor were there facts or circumstances in the record to support such a finding. Lastly, and most importantly, Heffernan did not even present any defense to his escape charge and subsequent conviction. Under these circumstances, we must find that Heffernan was not prejudiced in this manner. "The crucial factor in a prejudice determination is whether the defense has been impaired." State v. Waters (1987), 228 Mont. 490, 494, 743 P.2d 617, 620. Considering the above interests, in light of the facts

10

presented, we conclude that Heffernan was not prejudiced by the delay in bringing his cause to trial.

In summary, the State is charged with a 139-day delay. This delay was not intentional, but was rather inherent and institutional in nature. Lastly, except for some anxiety which we have presumed, Heffernan was not prejudiced by the pretrial delay. Based on our analysis, we hold that under the four factor balance test of Barker, Heffernan was not denied his right to a speedy trial and the District Court did not err in denying Heffernan's motion to dismiss.

The District Court is hereby affirmed.

_John Conway Harrison_
Justice

We concur:

_Justices_