**STATE of Missouri, Respondent,**

v.

**Roy E. HARRIS, Appellant.**

**No. WD 49455.**

Missouri Court of Appeals,
Western District.

Sept. 10, 1996.

Rose M. Wibbenmeyer, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

LAURA DENVIR STITH, Presiding Judge.

Defendant–Appellant Roy E. Harris was sentenced as a persistent offender under Section 558.019 to nine concurrent eight-year terms on three counts of burglary, three counts of stealing, two counts of receiving stolen property and one count of possession of a concealable firearm. Section 558.019 by its terms does not permit sentencing as a persistent offender for any of these convictions other than burglary. Accordingly, we reverse and remand the other convictions for entry of *nunc pro tunc* orders deleting reference to Section 558.019 in his sentences on those counts.

Mr. Harris also argues that the trial court should have granted his motion to disqualify the prosecutor. He alleges that the prosecutor had a conflict of interest because the prosecutor both prosecuted him and defended two members of the Pettis County Sheriff's Department in a federal civil rights action he brought against them. Because no actual conflict of interest existed and the prosecutor was obligated by law to represent the Sheriff's Department employees in defendant's lawsuit, we find it would contravene public policy to permit defendant to disqualify the prosecutor merely by filing a lawsuit against persons the prosecutor was required to defend. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 1993, two Sedalia police officers, who had been searching for Mr. Harris, observed Mr. Harris as he exited his car in the parking lot of a local pawn shop. As Mr. Harris approached the shop's entrance, one of the officers noticed that he was carrying a silver revolver in his hand. The officers followed Mr. Harris into the pawn shop where he placed the firearm on the counter. The officers then confiscated the firearm, which had been stolen from a Sedalia resident, and arrested Mr. Harris. A subsequent search of Mr. Harris' person and his car revealed other items of stolen property, a pair of black gloves, a small flashlight and a screwdriver. Further evidence showed that Mr. Harris had been incarcerated for burglary within five years of the date of the instant offense.

Mr. Harris was initially indicted by a Pettis County Grand Jury on eleven counts, including three counts of second degree bur-

glary under § 569.170 [1]; three counts of stealing property with a value of $150 or more under § 570.030; two counts of receiving stolen property under § 570.080; one count of possession of a concealable firearm under § 571.070; one count of possession of burglar's tools, § 569.180; and one count of misdemeanor possession of a controlled substance under § 195.202. The indictment further alleged that Mr. Harris was a prior and persistent offender under Section 558.019, as well as under Sections 558.016 and 557.036.4. Venue was then changed from Pettis County to Cooper County.

Sometime after his arrest Defendant filed a civil rights suit in federal district court against two members of the Pettis County Sheriff's Department. Mr. Mittelhauser, the prosecuting attorney of Pettis County, was appointed to prosecute Mr. Harris in the instant action and to act as counsel for the members of the Sheriff's Department sued by Mr. Harris in the federal action. Defendant alleged that this dual role created a conflict of interest and moved to disqualify the office of the Pettis County Prosecuting Attorney, and in particular Mr. Mittelhauser. That motion was overruled.

On that same day, defense counsel filed a motion to sever the count of possession of a concealable firearm and the count of possession of burglar's tools from the other counts in the indictment. That motion was granted. As a result, an Information In Lieu of Indictment was filed charging Mr. Harris with possession of a concealable firearm and possession of burglar's tools. It charged Mr. Harris as a prior and persistent offender only under Sections 558.016 and 557.036.4 and not under Section 558.019.

The following day, Mr. Harris was tried on the two severed counts in Cooper County. The jury acquitted Mr. Harris of possession of burglar's tools but found him guilty of possession of a concealable firearm. On May 6, 1994, the court denied Mr. Harris' Motion for New Trial and sentenced him as a prior and persistent offender under Sections 558.016 and 558.019 to an eight-year term.

Pursuant to a plea agreement, one of the remaining counts in the original eleven count indictment was dropped, and Mr. Harris pleaded guilty on May 11, 1994, to the eight remaining counts of that indictment, which included three counts of burglary, three counts of stealing and two counts of receiving stolen property. The court then sentenced Mr. Harris as a prior and persistent offender under Sections 558.016 and 558.019 to eight concurrent eight-year terms. The court further directed the sentences to run concurrently with the eight-year term to which Mr. Harris had been sentenced in connection with his jury conviction for possession of a concealable firearm.

On July 25, 1994, Mr. Harris filed separate *pro se* motions under Rule 24.035 and Rule 29.15 seeking to vacate each of his nine convictions and sentences. Following an evidentiary hearing, the motion court denied Mr. Harris' prayer for post-conviction relief. Pursuant to Rule 29.15(*l*) Mr. Harris' appeal from the denial of his Rule 24.035 and Rule 29.15 motions and his appeal from his conviction of possession of a concealable firearm have been consolidated into the single appeal now before this Court.

## II. NUNC PRO TUNC CORRECTION OF MR. HARRIS CHARACTERIZATION *AS A PRIOR AND PERSISTENT OFFENDER UNDER SECTION 558.019*

■ Mr. Harris contends the trial court plainly erred in sentencing him as a persistent offender under Section 558.019 for his six convictions for possession of a concealable firearm, stealing and receiving stolen property in that those offenses are not class A, B or dangerous felonies. We agree. The statute itself states it applies:

> only to class A and B felonies committed under the following Missouri laws: chapters 195, 491, 564, 565, 566, 567, 568, 569, 570, 571, 573, 575, RSMo, and dangerous felonies as defined in subdivision (8) of section 556.061, RSMo, and any felonies that have been in any manner enhanced by operation of law to class A or B felonies for the purpose of sentencing.

---

**1.** All Statutory references are to RSMo 1986 & Supp.1993.

§ 558.019.2. We therefore find that Mr. Harris was erroneously sentenced as a persistent offender under Section 558.019 for his convictions on the one count of possession of a concealable firearm, three counts of stealing and two counts of receiving stolen property. At the time in question, however, burglary was included as a dangerous felony. § 556.061(8).[2] He therefore was properly sentenced under Section 558.019 for his three burglary convictions.

Because Section 558.019 requires that a prisoner serve certain percentages of his sentence depending on the number of his prior felony convictions before becoming eligible for parole, Mr. Harris contends that he was prejudiced by the court's errors in sentencing him under Section 558.019 on the counts other than burglary. He requests that we vacate and correct the sentences or, in the alternative, remand the case for resentencing.

While conceding that six of the sentences erroneously stated that Mr. Harris was a persistent offender under Section 558.019, the State denies that the error was prejudicial. The State notes that because Mr. Harris was appropriately sentenced as a prior and persistent offender for his burglary convictions, he will still be required to serve the minimum prison term of his three eight-year sentences for those burglary convictions set out in Section 558.019 before becoming eligible for parole. § 558.019.2. As the sentences for the burglaries were ordered to be served concurrently with the other eight-year sentences he received for his other convictions, the State suggests, correction of the other erroneous sentences will not entitle him to earlier release from prison.

Even assuming that the State is accurate that correction of the sentencing error may not result in an earlier release for Mr. Harris, that is not the issue on this appeal. Mr. Harris is entitled to correction of his sentences.[3] We thus remand for the limited purpose of allowing the trial court to enter an order *nunc pro tunc* to remove references to Section 558.019 from the court's written judgment on Mr. Harris' jury conviction, and on his convictions for stealing property with a value of $150 or more and receiving stolen property.[4]

## III. MOTION TO DISQUALIFY PROSECUTOR'S OFFICE

■ Mr. Harris also claims that the trial court erred in failing to disqualify the office of the Pettis County Prosecuting Attorney and in refusing to appoint a special prosecutor under Section 56.110. Jeff Mittelhauser was the Pettis County Prosecutor handling Mr. Harris' criminal trial. Sometime after his appointment, but before the beginning of the criminal trial, Mr. Harris filed a civil rights action in federal district court against Pettis County Sheriff Gary Starke and Deputy William Bruening. In that suit he alleged that he did not receive necessary medical treatment while in jail.

---

2. Burglary has been eliminated from the list of dangerous felonies. Dangerous felony now means "arson in the first degree, assault in the first degree, forcible rape, forcible sodomy, kidnapping, murder in the second degree and robbery in the first degree." § 556.061, RSMo 1994.

3. Such plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted. Rule 30.20; Rule 84.13(c); *Drennen v. State*, 906 S.W.2d 880, 882 (Mo.App.1995). The State has conceded for purposes of this appeal that this court may reach and correct the errors alleged by Mr. Harris insofar as they resulted in his sentencing under statutes which by their terms are inapplicable to the crimes for which he was convicted.

4. *See State v. Winters*, 900 S.W.2d 636, 641 (Mo. App.1995) (trial court's judgment affirmed, but remanded for entry of order *nunc pro tunc* to remove reference to § 558.019 where defendant was not *charged* as or found to be a prior offender under § 558.019); *State v. Mashek*, 882 S.W.2d 777, 781 (Mo.App.1994) (ten-year sentence affirmed, but trial court directed to enter an order *nunc pro tunc* to remove reference to " § 448.019"); *State v. King*, 865 S.W.2d 845, 848 (Mo.App.1993) (convictions affirmed, but remanded for entry of order *nunc pro tunc* to remove reference to § 558.019 where defendant not *charged* as prior offender under that section); *State v. Anthony*, 857 S.W.2d 861, 868–69 (Mo. App.1993) (conviction affirmed, but remanded for entry of order *nunc pro tunc* to remove references to §§ 558.016 and 558.019); and *State v. Ivy*, 851 S.W.2d 71, 73 (Mo.App.1993) (evidence showed defendant was "prior" offender but not "persistent" offender so clerical error corrected by *nunc pro tunc* order).

Section 56.060 states that "[e]ach prosecuting attorney shall commence and prosecute all civil and criminal actions in his county in which the county or state is concerned, [and] defend all suits against the state or county...." § 56.060.1. Similarly, Section 56.070 provides that "[t]he prosecuting attorney shall represent generally the county in all matters of law...." § 56.070.1. Pursuant to these statutes, unless disqualified because of a conflict of interest,[5] the county prosecutor represents county employees where they are sued in their official capacity. *See State ex rel. Pettis County v. Sloan,* 643 S.W.2d 618, 620 (Mo.App.1982); Op. Atty. Gen. No. 93, Crow, (February 20, 1970). Accordingly, Mr. Mittelhauser represented Sheriff Starke and Deputy Bruening in the civil rights action Mr. Harris filed against them.

Mr. Mittelhauser notified Michaela Sinkhorn (the public defender representing Mr. Harris), of his representation of the Sheriff and Deputy by letter dated February 21, 1994. Mr. Mittelhauser further indicated in the letter that he would need to communicate directly with Mr. Harris in defending the federal lawsuit, and might need to take Mr. Harris' deposition if the matter could not be resolved informally. The letter also stated that Mr. Mittelhauser would not ask Mr. Harris any questions related to the criminal charges in the instant case. He also noted, however, that "I will be asking him, as I would any witness in a deposition, about prior criminal convictions," and that while he did not plan to use any answers in the criminal case, to the extent the answers were relevant it might be "impossible" to entirely isolate the two cases. The prosecutor closed by offering to include Ms. Sinkhorn in any conference or deposition with Mr. Harris, and by welcoming any suggestions Ms. Sinkhorn might have as to how he should proceed.

Mr. Harris' attorney apparently suggested—and Mr. Mittelhauser agreed—to postpone her client's deposition in the federal action until after the criminal trial. A few weeks later, however, she also filed her motion to disqualify the office of the Pettis County Prosecuting Attorney based on Mr. Mittelhauser's representation of the county employees in the federal action. In support of the motion, she alleged that the fact that the same office was prosecuting Mr. Harris and was representing the defendants in the federal suit created an appearance of impropriety that warranted the disqualification of the prosecutor's office and in particular of Mr. Mittelhauser.

As noted earlier, the trial court denied the motion to disqualify and to appoint a special prosecutor. Mr. Harris now seeks a reversal of his convictions based upon the alleged conflict of interest.

It is clear that prosecutors, as quasi-judicial officers, have a duty to avoid even the appearance of impropriety. *State v. Boyd,* 560 S.W.2d 296, 297 (Mo.App.1977). Nonetheless, a prosecutor may be disqualified only "when he has a personal interest of a nature which might preclude his according the defendant the fair treatment to which he is entitled." *State v. Stewart,* 869 S.W.2d 86, 90 (Mo.App.1993). The trial court's decision whether to disqualify the prosecutor is reviewed only for an abuse of discretion. *State v. Sonka,* 893 S.W.2d 388, 389 (Mo.App.1995).

The particular issue before us is whether the prosecutor must be disqualified for a potential conflict of interest where he is not himself sued, but rather is required by statute to represent county officials in a civil rights lawsuit filed by the defendant in federal court. While this appears to be an issue of first impression in Missouri, defendant argues that our resolution of this issue should be guided by *State v. Ross,* 829 S.W.2d 948 (Mo. banc 1992). In *Ross,* defendant's convictions were reversed because of an appearance of impropriety arising from the fact that two members of a law firm which represented the defendant in a tort suit filed by the

5. Section 56.110 provides "If the prosecuting attorney and assistant prosecuting attorney be interested or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his office, or shall be related to the defendant in any criminal prosecution, either by blood or by marriage, the court having criminal jurisdiction may appoint some other attorney to prosecute or defend the cause."

assault victim also worked as part-time county prosecutors. *Ross* determined that the interconnections between the prosecuting attorney's office and the law firm handling the defendant's related civil case could create a reasonable suspicion that members of the prosecuting attorney's office had access to confidential information. *Id.* at 951. To avoid such an appearance of impropriety *Ross* held that "[p]rejudice is presumed, subject to rebuttal only upon a showing that the defendant waived the conflict *and* that steps were taken to insulate the actual prosecution from the conflict." *Id.* at 952 (emphasis in original). *See also State v. Wacaser,* 794 S.W.2d 190, 196 (Mo. banc 1990) (prosecutor should not serve if he has access to defendant's privileged information).

Mr. Harris argues that, as in *Ross,* the prosecutor's office should have been disqualified because the State did not show that a waiver occurred and that adequate precautions were taken to insulate the prosecutor from receipt of confidential information. We think that *Ross* is quite distinguishable from the instant case, however. Unlike in *Ross,* in the instant case the prosecutor's law firm was not representing the defendant in the civil action, and thus did not have potential access to confidential information which could later be used against defendant in the criminal trial. While theoretically the prosecutor could have gained access to such information through discovery in the civil case, he did not do so. Rather, recognizing that if the prosecutor obtained such information in the civil action it could adversely affect the integrity of Mr. Harris' criminal trial, the prosecutor and the defense attorney agreed not to undertake such discovery until after the criminal action was concluded. As a result, the prosecutor did not in fact obtain any confidential information, and there is no allegation that the integrity of the criminal trial was in fact affected by Mr. Mittelhauser's representation of the Sheriff and Deputy in the federal civil rights action.

For these reasons, we believe *State v. Sonka,* 893 S.W.2d at 389, is much more on point. In *Sonka,* the defendant filed a civil rights lawsuit against the prosecutor, and then moved to disqualify the prosecutor on the basis of bias and an appearance of impropriety. *Sonka* held that the mere filing of the suit itself did not create an actual conflict of interest. Thus, the issue was whether disqualification should be required where the conflict was merely potential, and not actual.

*Sonka* held that disqualification should not be required in such a situation because of the public policy concerns which would arise if a criminal defendant could disqualify a prosecutor, or indeed the prosecutor's whole office, merely by filing a lawsuit. Any other policy, the court held, "could paralyze prosecutions of criminal defendants." *Id.* at 389. Defendants could simply file civil suits seriatim against whoever or whatever office was assigned to prosecute defendant's case, and therefore indefinitely delay or hamper trial.

While Missouri has not had occasion to apply these principles to a case in which the prosecutor was not himself sued, but instead was representing county employees who were sued, Montana has addressed this very situation in *State v. Dahms,* 252 Mont. 1, 825 P.2d 1214 (1992). *Dahms* held that the trial court was within its discretion in refusing to disqualify the county attorney who both prosecuted the defendant in a criminal trial and also represented the county and its officers in a civil action filed by the defendant. In reaching its decision, *Dahms* concluded that the county attorney was required by law to represent the county until the county's insurance deductible was reached. 825 P.2d at 1219. The court also relied upon the State's arguments that the prosecution had commenced well before the civil suit was filed and that there was no evidence showing the prosecution was handled any differently because of the pending civil suit. *Id.*

As in *Dahms,* in this case Mr. Harris' civil action was also filed subsequent to his arrest but prior to his criminal trial, and the prosecutor was required under Section 56.060 to represent the defendants in the criminal trial. As in *Sonka,* there was no actual conflict of interest. Moreover, he did not represent defendant in either case and the nature of the representation in the civil case was not such as to give the prosecutor access to any confidential information. For these reasons, we do not believe that Mr. Mittelhauser's

dual representation created such an appearance of impropriety that prejudice should be presumed, as was the case in *Ross*. We thus hold that the trial court did not err in refusing to disqualify Mr. Mittelhauser from representing the State in the criminal trial simply because, as prosecuting attorney, he also represented the interests of the county and its officers in a civil lawsuit filed thereafter by the defendant.

Accordingly, we affirm Mr. Harris' jury conviction. We reverse and remand denial of his motions for post-conviction relief under Rule 24.035 and Rule 29.15 for entry of *nunc pro tunc* orders deleting reference to Section 558.019 in his sentences in regard to all counts other than the three burglary counts. In all other respects, denial of post-conviction relief under Rule 24.035 and under Rule 29.15 is affirmed.

All concur.