**STATE of Missouri, Respondent,**

v.

**Lewis WILLIAMS, Appellant.**

**No. ED 76204.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 4, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 10, 2000.

Application for Transfer Denied
June 27, 2000.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Attys. Gen., Jefferson City, for respondent.

ROBERT G. DOWD, Jr., Judge.

Lewis Williams (Williams) appeals from the judgment upon his conviction by a jury of one count of murder in the first degree, Section 565.020, RSMo 1994 [1]; two counts of assault in the first degree, Section 565.050; and three counts of armed criminal action, Section 571.015, for which Williams was sentenced to life imprisonment without the possibility of parole for murder, life imprisonment for the corresponding armed criminal action count, and fifteen years' imprisonment for each of the remaining counts, all sentences to be served concurrently. Williams claims the trial court (1) plainly erred in repeatedly asking Williams in the presence of the jury if he wanted to testify because this questioning resulted in manifest injustice, (2) plainly erred in overruling an objection and permitting the prosecutor to cross-examine Williams about his involvement in an unrelated shooting because this questioning resulted in manifest injustice, and (3) erred in denying Williams' motion for judgment of acquittal at the close of the entire case. We affirm in part and remand in part with directions.

We view the facts in the light most favorable to the jury verdict. On March 28, 1993, five shots were fired into the home of Lucille Johnson, Williams' mother, which was located in the Bluemeyer Housing Project. Williams was not home when this happened. He learned of the shooting when he returned home later that day. Shortly after the shooting, several people were playing basketball in the parking lot of the Bluemeyer Housing Project. A van pulled up to the lot and Williams and Earnest Black began firing shots at the people playing basketball. One shot hit and killed John Brown and another hit Walter Russell, an eleven-year-old boy, in the leg. The van then drove away from the scene.

Three St. Louis Housing Authority officers, Darryl Ewing, Gregory Taylor, and Joseph Simmons, pursued the van. The van stopped and three men, including Williams and Black, exited the van and started shooting at the officers.

Williams was later arrested and brought to the police station to participate in a lineup. While preparing for the lineup, Carl Hoyt, a civilian employee of the prisoner processing division, heard Williams tell three men that he had been involved in a driveby shooting in which an eleven-year-old boy had been shot.

At trial, Williams initially declined to testify in his own behalf. He did present the testimony of three witnesses. The State presented three rebuttal witnesses, one of whom, Patrick Brown, testified that he saw Williams and Black firing shots from the van. Williams then took the stand and testified in his own behalf. He denied having any involvement in the shooting. The jury found Williams guilty as charged.

In his first point, Williams claims the trial court plainly erred in repeatedly asking him in the presence of the jury if he wanted to testify because this questioning resulted in manifest injustice. Williams argues the questioning encouraged the jury to draw an adverse inference from his initial refusal to testify in his own defense and constituted a challenge to Williams to testify. Specifically, he complains of the following exchange:

WILLIAMS: I need to address the Court.

COURT: Just a minute, Mr. Williams. Do you care to testify at this time?

WILLIAMS: Yes, I would.

---

1. All further statutory references are to RSMo 1994 unless otherwise indicated.

COURT: Would you please take the witness stand, please?

WILLIAMS: I would leave the room in your contempt. I wish to—I would leave the room.

COURT: Take her out. Take her out. Take her out. All folks please leave. Do you wish to testify?

WILLIAMS: I'm not asking to testify. I don't mind but I do not have a lawyer.

COURT: If you want to testify, come up and testify. If you wish to testify, come up and testify. Let the record show that the witness has remained silent and does not wish to testify and we'll proceed. Ms. Johnson, call the next witness.

MS. JOHNSON [defense counsel]: At this time, the defense rests.

COURT: If you have another witness you want to call besides—

WILLIAMS: Patrick Brown.

COURT: If you wish to testify, you may get up and testify.

WILLIAMS: Where's the witness, Patrick Brown?

COURT: This is your opportunity to testify, if you wish to testify.

WILLIAMS: Yes, I do want Patrick Brown.

COURT: All right. Get up here and testify if you want to testify now.

WILLIAMS: I want the question answered.

COURT: If you want to testify, come up and testify right now.

WILLIAMS: Would Patrick Brown—

COURT: Excuse me. If you wish to testify, step forward and testify now, Mr. Williams.

WILLIAMS: I don't have a lawyer.

COURT: All right. Then the defense rests. You may approach the bench.

■ Williams concedes that he did not object to this exchange at trial. As such, this claim is not properly preserved for appeal, and the only review here can be for plain error. Plain error review, however, should be used sparingly and should not be used to justify the review of every point that has not properly been preserved. *State v. Fairow*, 991 S.W.2d 712, 715 (Mo.App. E.D.1999). A claim should be reviewed for plain error only where it facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted. *Id.* If the court exercises its discretion and reviews for plain error, the appellant bears the burden of demonstrating not only that the trial court erred but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989). "Relief under plain error, therefore, requires that appellant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights." *Id.*

■ Williams correctly notes that direct references to a defendant's right to testify or failure to do so by a prosecutor or trial court are generally prohibited. *State v. Futo*, 990 S.W.2d 7, 14 (Mo.App. E.D. 1999). This is because a criminal defendant has the right not to testify. *Id.*

Williams contends the trial court's questioning constituted an attempt to bring his reluctance to testify before the jury and thus caused the jury to draw an adverse inference therefrom. Williams specifically argues the following exchange, which occurred outside of the hearing of the jury, rendered the trial court aware of his reluctance to testify:

JOHNSON [defense counsel]: At this time, I don't know what to do. He is not taking the stand, but we want to bring in Patrick Brown.

COURT: Where is he?

JOHNSON: I have no idea. He was a state's witness.

WARREN [the prosecutor]: We gave the only phone number we had to Ms. Johnson last night and we advised her of the same number and that's the only number they have.

JOHNSON: They advised me Pat Brown does not stay out there and I do not think my investigator would be safe going out to try and find the guy because it's a family member of the deceased.

WARREN: There's no reason to suspect the family would do anything.

COURT: We can call a recess and have your investigator see if he can find him.

JOHNSON: It's my understanding even Mr. Warren had trouble with this guy.

WARREN: We had to leave a number of phone calls, but put the defendant on now. There's no reason—

COURT: He does not want to testify.

JOHNSON: Not until this guy does.

There is no merit to this claim. Although this exchange may have made the trial court aware that Williams would not be testifying until after Patrick Brown did so, there is no evidence that such knowledge rendered the trial court's later questioning of Williams a deliberate attempt to bring his reluctance to testify before the jury. The trial court simply asked Williams if he wished to testify only in response to his outburst. Williams has therefore failed to point to anything in the record which establishes that he was prejudiced by the trial court's comments.

Moreover, this court has recently held that prejudice and reversible error cannot automatically be presumed whenever a reference to a defendant's right to testify or failure to do so is made. *Futo*, 990 S.W.2d at 16. This is because the "record may present a state of facts and circumstances permitting the court to say that an allusion to the failure of defendant ... to testify was not prejudicial error." *Id.* (quoting *State v. Watson*, 1 S.W.2d 837, 840–41 (Mo. 1927)). Such a state of facts and circumstances exist where the evidence of guilt is so strong it demonstrates beyond a reasonable doubt that the reference to the defendant's right to testify did not contribute to the defendant's conviction. *Id.*

Here, the State presented the testimony of three eyewitnesses to the shooting. Each of these witnesses identified Williams as one of the people who participated in the driveby shooting. The State presented the testimony of two Housing Authority officers who pursued the van immediately after the shooting and identified Williams as one of the men who jumped out of the van, fired shots in their direction, and fled the scene. The State further presented the testimony of a witness who overheard Williams admit to committing a driveby shooting at Bluemeyer Housing Project in which an eleven-year-old boy was shot. This evidence demonstrated that Williams was guilty of the crimes for which he was charged.

Williams further contends the trial court's comments had the effect of coercing him to testify. Williams cites in support *State v. Croka*, 646 S.W.2d 389 (Mo. App. W.D.1983). In *Croka*, the court held that the prosecuting attorney's comment during voir dire that he anticipated that the defendant would testify coerced the defendant into testifying because it challenged the jury to observe whether the defendant took the stand. *Id.* at 390.

*Croka* has no bearing on the instant case. In *Croka*, the prosecuting attorney gratuitously mentioned the defendant's right to testify. Here, the trial court's remarks were in direct response to Williams' outburst. Although the aforementioned conversation between Williams and the trial court took place in front of the jury, it immediately followed a conversation among the attorneys, the trial court, and Williams which occurred outside of the jury's hearing. This conversation featured an acrimonious exchange between the trial court and Williams wherein Williams claimed he did not have an attorney and the trial court admonished him both to follow his attorney's advice and to be seated. The dialogue of which Williams complains was therefore an extension of a conversation which occurred outside of the jury's presence. Thus the trial court's

comments are distinguishable from the comments which necessitated a reversal in *Croka* in the sense that they were provoked.

Furthermore, the latter conversation cited above demonstrates that Williams wanted to testify, but not until after Patrick Brown had done so. This is indicated by his affirmative response the first time the trial court asked him if he wanted to testify. Rather than demonstrating that he was forced to testify against his wishes, the record reveals that Williams got what he wanted—the opportunity to testify after Patrick Brown had been called.

The court addressed an analogous situation in *State v. Spidle*, 967 S.W.2d 289 (Mo.App. W.D.1998). The prosecutor in *Spidle* stated during voir dire that the state could not call the defendant as a witness. *Id.* at 292. The court held that although this statement constituted plain error, plain error does not require reversal of a conviction in all circumstances. *Id.* Considering whether the prosecutor's comments had the effect of compelling the defendant to testify, the court noted that manifest injustice did not occur because the defendant stated that he did want to testify and because the defendant at no time indicated that he felt compelled to testify as a result of the prosecutor's comments. *Id.*

As in *Spidle*, Williams was asked whether he wanted to testify and at no time suggested that he felt compelled to testify as a result of the trial court's comments. Moreover, the trial court made this inquiry only after Williams asked to address the court in the jury's presence. As Williams has failed to adduce any evidence in support of his contention, he has failed to demonstrate that manifest injustice has occurred.

Williams contends *State v. Howard*, 540 S.W.2d 86 (Mo. banc 1976) is instructive on this issue. In that case the defendant spoke out during the trial court's reading of jury instructions, and the trial court responded with a comment on the defendant's right to testify. *Id.* at 87. The Supreme Court held the trial court's response, "Now you were given the opportunity to take the stand," resulted in manifest injustice. *Id.* at 88. The court reasoned that this statement could have violated the defendant's presumption of innocence and suggested to the jury that the burden of proving his innocence was on the defendant. *Id.*

*Howard*, however, is distinguishable from the instant case. Unlike the defendant in *Howard*, Williams did take the stand and testify. Thus, the jury could not have inferred that Williams was guilty because he did not testify. Moreover, since Williams testified, there is no reason to think that his presumption of innocence has been violated or that the jury understood that Williams had the burden of proving his innocence.

Because Williams has failed to demonstrate that the trial court's comments contributed to his convictions, he has failed to demonstrate that he suffered manifest prejudice as a result of these comments. Point denied.

■ In his second point, Williams contends the trial court plainly erred in overruling an objection and permitting the prosecutor to cross-examine him about his involvement in an unrelated shooting. Williams concedes that he did not preserve this issue for appeal in his motion for a new trial. As such, this claim is not properly preserved for appeal, and the only review here can be for plain error.

Williams argues this questioning resulted in manifest injustice in that it allowed the prosecutor to bring before the jury irrelevant other crimes and led the jury to believe that Williams had a propensity for violence. We disagree.

Williams specifically complains of the following exchange:

WARREN [the prosecutor]: Now, early in the day—do you remember someone Damon Johnson?

WILLIAMS: No.

WARREN: Just prior to your house being shot up, were you involved in another shooting in the neighborhood?

JOHNSON [defense counsel]: I object. It's irrelevant.

COURT: Sustained.

WARREN: It goes to motive.

COURT: Come to the bench.

(Out of the hearing of the jury, at the bench, the following takes place:)

JOHNSON: I object and move for a mistrial. Mr. Warren just introduced evidence of other crimes.

WARREN: It's acceptable when it goes to show the motive this [sic] is an ongoing battle between him and another gang and this is motive for this shooting.

COURT: You can ask him about another shooting as long as he is not the shooter. Okay? I don't care. It's evidence of other crimes. I'm not letting it come in.

WARREN: So I understand the Court's ruling, I'm not sure where I can or cannot go.

COURT: You can ask leading questions, but not ask him if he was a shooter. Your motion is overruled.

(End of bench conference. Back within the hearing of the jury, the following takes place:)

COURT: Ladies and gentlemen, you may disregard the last question.

WARREN: You are aware you were identified as being involved in the incident earlier, before your mother's house got shot up, in which somebody was shooting guns?

WILLIAMS: That's what it says in the police report.

WARREN: Are you aware you were identified as one of those parties?

JOHNSON: May I have an objection that is continuing throughout the entire line?

COURT: Come to the bench again.

(Out of the hearing of the jury, at the bench, the following takes place:)

COURT: I don't mind you saying was he involved, but was he involved in the shooting with other people, where he is somehow implicated as being the shooter with the people shooting, I think it's evidence of other crimes. My ruling was specifically that you have to reword your question.

WARREN: I am afraid I asked if he was involved.

COURT: But you asked was he involved in a shooting. But what you have to do is word it so was he involved in a fracas with other people.

WARREN: I'll leave it alone because I'm not sure of the ruling.

Williams argues this was evidence of other crimes that was not logically or legally relevant to demonstrate his guilt of the crimes with which he was charged. Williams further argues this evidence was introduced solely to show that he had a violent disposition and a propensity to commit such crimes.

 Evidence of uncharged crimes, wrongs or acts committed by the accused is generally inadmissible. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). If evidence is logically relevant to a fact in issue, however, it may be admissible if its probative value outweighs any prejudice. *State v. Gray,* 887 S.W.2d 369, 386 (Mo. banc 1994). Evidence which tends to establish motive, intent, absence of mistake or accident, common scheme or plan, or identity has been held to be categorically admissible. *State v. Henderson,* 826 S.W.2d 371, 374 (Mo.App. E.D.1992). The state is generally given wide latitude in the development of evidence of motive. *State v. Blackman,* 875 S.W.2d 122, 139 (Mo. App. E.D.1994). If evidence of uncharged crimes is relevant for some purpose, the evidence should not be rejected "merely because it incidentally shows the accused to be guilty of another crime." *State v. Tomlin,* 830 S.W.2d 31, 34 (Mo.App. W.D. 1992).

Here, the State questioned Williams about his involvement in a prior shooting in order to show his motive for committing the shooting at Bluemeyer Housing Pro-

ject. The evidence presented at trial indicated that there had been several shootings in the neighborhood of the housing project on March 28, 1993. The evidence also indicated these shootings were gang–related and that Williams was involved in some of them. This evidence was relevant to show that Williams' mother's house was shot up in retaliation for an earlier shooting. Although the evidence at trial did not establish that anyone involved in the prior shootings had been a target in the shooting for which Williams is charged here, it is reasonable to infer that Williams committed the driveby shooting to retaliate for the shooting at his mother's house. Thus the evidence was relevant to show Williams' motive for committing the shooting.

Moreover, Williams has failed to demonstrate that the prejudicial effect of this evidence outweighed its probative value. As discussed in point one, the evidence of guilt here was overwhelming. Given all of this evidence, it is unlikely that the jury was persuaded to convict Williams based on the references made to some other shooting in Williams' cross-examination. Point denied.

In his third point, Williams argues the trial court erred in denying his motion for judgment of acquittal at the close of the entire case because there was legally insufficient evidence to support a finding of guilt. In making this claim, Williams argues the evidence was insufficient to support a conviction for the class A felony of assault in the first degree because there was no evidence that he caused serious physical injury to Walter Russell.

In reviewing Williams' claim that there was insufficient evidence to convict him of assault in the first degree, this court should accept as true all of the evidence favorable to the State, including all favorable inferences to be drawn therefrom, and disregard all contrary evidence and inferences. *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998). Appellate review is limited to a determination of whether there is sufficient evidence from which a reason-

able juror could have found the appellant guilty of the crime charged beyond a reasonable doubt. *Id.* In considering whether the evidence is sufficient to support the guilty verdict, the court should consider whether a reasonable juror could find each element of the crime charged beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993).

To sustain a conviction for assault in the first degree, the state is required to show that a defendant attempted to kill or knowingly caused or attempted to cause serious physical injury to another person. Section 565.050.1. If the victim actually sustains a serious physical injury, assault in the first degree is a class A felony. Section 565.050.2. If the victim does not sustain a serious physical injury, assault in the first degree is a class B felony. *Id.* Williams was charged with the assault in the first degree of Russell as a class A felony.

Williams correctly notes that under the class A charge the State was required to prove that he actually caused serious physical injury to Russell. Williams also correctly notes that the evidence here was insufficient to sustain a conviction based on the class A charge. However, that does not end the discussion.

The jury instruction as to the assault in the first degree charge pertaining to Walter Russell provided, in pertinent part, as follows:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about March 28, 1993, in the City of St. Louis, State of Missouri, the defendant or another person attempted to kill or cause serious physical injury to Walter Russell by shooting him, then you are instructed that the offense of assault in the first degree has occurred.

■ Although the information charged Williams with the class A felony of assault in the first degree, the instruction clearly

submitted this charge as a class B felony. As such, there was a variance between the information and the instruction. Thus, the issue for this court is whether this variance is fatal.

 A variance between the information and the jury instruction does not automatically result in reversible error. *State v. Lee*, 841 S.W.2d 648, 651 (Mo. banc 1992). Such a variance is fatal where the instruction submits a new and distinct offense to the jury. *State v. Jones*, 930 S.W.2d 453, 455 (Mo.App. E.D.1996). Instructing on one form of the offense where the information charges another form of the same offense is not reversible error absent a showing that the variance between the information and the instruction is material and prejudicial. *Lee*, 841 S.W.2d at 651. Variances are material where they affect whether the defendant received adequate notice of the charges against him. *State v. Whitfield*, 939 S.W.2d 361, 366 (Mo. banc 1997). Variances are prejudicial where they affect the defendant's ability to defend the charge against him. *Id.*

Here, Williams was charged with assault in the first degree based on the shooting of Walter Russell. The jury instruction submitted the offense of assault in the first degree based on the shooting of Walter Russell. Therefore, it cannot be said that the jury instruction submitted a new and distinct offense to the jury.

The information notified Williams that he would face a charge of shooting Walter Russell. The jury instruction also submitted an offense based on the shooting of Walter Russell. Thus, the instruction did not affect whether Williams received adequate notice of the charge against him. And because Williams denied having any involvement in the shooting, it is difficult to see how this defense would have changed based on whether he was charged with actually causing serious physical injury to Russell or with merely attempting to do so. Because the variance between the charge and instruction here was neither material nor prejudicial, the trial court did not err in submitting the instruction on the class B felony of assault in the first degree to the jury.

 The evidence here was sufficient to sustain a conviction based on such instruction. The evidence presented at trial showed that Williams fired several shots into a crowd of people, one of which struck Walter Russell in the leg. This was sufficient evidence from which a reasonable juror could conclude that Williams committed the class B felony of assault in the first degree by attempting to kill or cause serious physical injury to Walter Russell. Therefore, although the State concedes that there was insufficient evidence to sustain Williams' conviction as a class A felony, there was sufficient evidence to sustain his conviction as a class B felony and sentence as instructed.

Williams argues the court should hold the State to the burden of proof on the offense as it was charged in the information, not how it could have otherwise been charged, citing *State v. Price*, 980 S.W.2d 143 (Mo.App. E.D.1998). In *Price* the defendant was charged with two charges, burglary in the second degree or, in the alternative, receiving stolen property, both of which were class C felonies. *Id.* at 143. The state asked the jury to find the defendant guilty of either charge. *Id.* at 144. The jury convicted the defendant of the latter charge and this court reversed on the basis of insufficient evidence to support that conviction. *Id.*

*Price*, however, is distinguishable. Unlike in *Price*, there was abundant evidence here with which to support Williams' conviction. Moreover, *Price* involved no variance between the information and the jury instructions. *Price*, therefore, has no bearing on the instant case.

 As Williams correctly notes, however, the judgment entered by the trial court in this case does indicate that he was convicted of the class A felony of assault in the first degree. In light of the jury instruction submitted on this charge, this

was a clerical error. Williams was convicted by the jury of the class B felony of assault in the first degree. Moreover, he was sentenced by the jury to fifteen years' imprisonment on the charge, within the range of punishment for a class B felony. Section 558.011.1(2).

That the judgment on this charge resulted from a clerical error is further illustrated by the fact that the judgment contained several other clerical errors. Although the assault in the first degree count charged against Williams for his shooting at officers Darryl Ewing, Joseph Simmons, and Gregory Taylor was charged and instructed as a class B felony, the trial court indicated that Williams was convicted of a class A felony. The judgment also indicated that Williams was convicted of class A felonies on all three armed criminal action counts, even though armed criminal action is an unclassified felony. These clerical errors do not require reversal, but may be corrected by the trial court pursuant to Supreme Court Rule 29.12. See *State v. Ivy*, 851 S.W.2d 71, 73 (Mo.App. E.D.1993); *State v. Anthony*, 857 S.W.2d 861, 868–69 (Mo.App.W.D.1993). We therefore affirm the judgment but remand for the entry of an order *nunc pro tunc* to reflect that Williams was convicted of one count of the class A felony of murder in the first degree, two counts of the class B felony of assault in the first degree, and three counts of the unclassified felony of armed criminal action. Supreme Court Rule 29.12; see also *State v. Harris*, 939 S.W.2d 915, 918 (Mo.App. W.D.1996).

Judgment affirmed in part and remanded in part with directions.

CRANE, P.J., and SULLIVAN, J, concur.